# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TERRENCE BROWN, | ) | |
| | ) | |
| Petitioner, | ) | No. 14-cv-5026 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on: (1) Petitioner Terrence Brown's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1], including the two claims that Petitioner added to his Section 2255 petition with leave of Court (see [6], [8]); and (3) Petitioner's motion for leave to amend his Section 2255 petition to add another claim based on newly discovered evidence [11]. For the reasons stated below, Petitioner's Section 2255 petition [1] and motion to amend [11] are denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States.

**I.  Background**

Petitioner Terrence Brown ("Petitioner") is currently serving a 228-month sentence after being convicted by a jury of possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). See *United States v. Rowe et al.*, Case No. 08-CR-1009, Docket Entries [181], [240]. The conviction relates to Petitioner's attempt to purchase ten kilograms of "sham" cocaine (a cocaine look-alike substance) from an

undercover officer of the U.S. Drug Enforcement Agency ("DEA"). Specifically, on December 3 and 4, 2008, Petitioner and an individual working as a cooperating source with the DEA spoke on the telephone to arrange the delivery of 10 kilograms of cocaine to Petitioner. These calls were recorded with the cooperating source's consent. As a result of the calls, the DEA arranged for an undercover officer to meet Petitioner and deliver 10 kilograms of sham cocaine.

On December 4, 2008, Petitioner and Lynn Rowe ("Rowe") arrived together in the area of 31st and Normal Street in Chicago. Petitioner was driving a blue Dodge Durango and Rowe was in the passenger seat. Petitioner and Rowe pulled into a nearby alley, where they met the undercover officer. The undercover officer got into the Durango through the rear driver's side door and placed a 10 kilogram bag of sham cocaine on the back seat. Rowe looked inside the bag and appeared to be counting the kilograms. Petitioner then handed Rowe a leather bag that contained approximately $14,700 in cash. Rowe passed the leather bag with the money to the undercover officer. The undercover officer took the money and exited the Durango. Petitioner and Rowe were arrested. Law enforcement officers searched the Durango. They discovered a trap compartment in the vehicle, which contained a loaded Lorcin Model L-380, .380 caliber pistol.

Following his arrest, Petitioner waived his *Miranda* rights in writing and agreed to speak with law enforcement agents. He admitted that he went to 31st and Normal Street earlier in the day to obtain 10 kilograms of cocaine. He also admitted that he had known the supplier for many years and that they had agreed to a purchase price of $28,500 per kilogram for the drugs. According to Petitioner, the cash was a partial payment for the cocaine and he intended to sell it in small quantities. Petitioner also admitted that the gun retrieved from the trap compartment

was his, that he had owned the gun for approximately ten years, and that he carried it for protection.

Petitioner was charged in the superseding indictment with: (1) possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count One); (2) attempted possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846 (Count Two); and (3) possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). Petitioner pled not guilty to all charges. Count One of the indictment was dismissed prior to trial. See Case No. 08-CR-1009, Docket Entries [115], [118].

Petitioner was tried by a jury on the remaining counts beginning on January 10, 2011. Petitioner admitted that he attempted to purchase 10 kilograms of sham cocaine (see [9] at 3 n.2), but disputed that he "possessed a firearm in furtherance of a drug trafficking crime." [1] at 2. Specifically, Petitioner testified that he spoke with his supplier by telephone to arrange for a cocaine purchase, that he met with the supplier's courier (who was actually the undercover officer) on December 4, 2008 to obtain 10 kilograms of cocaine, and that the cash he gave the undercover officer was a partial payment for the drugs. The parties stipulated that Petitioner was the victim of a serious beating in May 2008, which left him hospitalized. Petitioner testified that he placed the gun in the trap compartment of his vehicle after being released from the hospital in order to make himself feel safe. According to Petitioner, he had never removed the gun from the trap after placing it there. On cross-examination, Petitioner admitted that he was a convicted felon and that his Firearm Owners Identification card was revoked in 2007; he claimed not to know, however, that his card had been revoked. Petitioner also admitted that the cocaine he was intending to purchase would be worth hundreds of thousands of dollars and that he had an

incentive to protect the cocaine from theft. The Government presented opinion testimony from Special Agent Timothy Oko concerning, among other things, drug traffickers' use of hidden compartments and handguns.

At the conclusion of trial, the jury was instructed that if it found Petitioner guilty of the attempted possession count, it must also find the type and amount of controlled substance involved in the offense, including either: (a) 5 kilograms or more of mixtures containing cocaine; (b) more than 500 grams but less than 5 kilograms of mixtures containing cocaine; or (c) a measurable amount, but less than 500 grams of mixtures containing cocaine. See [5] at 8 (citing Tr. 396-97). The jury found Petitioner guilty of attempted possession (Count Two) and possession of a firearm in relation to a drug trafficking offense (Count Three). The jury determined by checking off the relevant box on the verdict form that the attempted possession offense involved 5 kilograms or more of mixtures containing cocaine. *Id.* (citing Tr. 403).

The Court sentenced Petitioner on July 8, 2011. On the attempted possession charge, the statutory minimum sentence was 120 months and the statutory maximum sentence was life. See 21 U.S.C. § 841(b). On the firearm charge, the statutory minimum sentence was 60 months, which must be served consecutively to the attempted possession charge. See 18 U.S.C. § 924(c)(1)(A). In total, the statutory minimum sentence that Petitioner could receive was 180 months imprisonment. See Case No. 08-cr-1009, Docket Entry [220] at 22. The offense level for the attempted possession charge was 32. *Id.* at 26. At sentencing, the Court determined based on Petitioner's offense conduct and his post-arrest statement that Petitioner was accountable for a total of approximately 68 kilograms of cocaine. See *id.* at 30. The Court explained that Petitioner's "own post arrest statements provide[d] more than adequate indicia of reliability to include the relevant conduct in calculating drug quantity." *Id.* at 25. Taking into

account the drug quantity, the Court calculated that Petitioner's applicable offense level under the Guidelines was 36 and that his Criminal History Category was II. This yielded an advisory Guideline range of 210 to 262 months of imprisonment on the attempted possession charge. *Id.* The Court sentenced Petitioner to a below-Guidelines sentence of 175 months on the attempted possession charge. See *id.* at 32. On the firearm charge, the Court sentenced Petitioner to the mandatory 60-month minimum term, to be served consecutively with the term for attempted possession, for a total sentence of 235 months. *Id.*

The Court took into account Petitioner's cooperation and acceptance of responsibility in applying the Section 3553(a) factors to determine Petitioner's sentence. See 18 U.S.C. § 3553(a). Specifically, the Court "accept[ed] on [Petitioner's] behalf [that] immediately after the arrest [Petitioner] essentially confessed to all the relevant conduct here, and . . . tried to cooperate with the government." Case No. 08-cr-1009, [220] at 27. The sentence that Petitioner received, 175 months, was within the Guidelines range (151 to 188 months) that would have been applicable if Petitioner had been given a three-level reduction for acceptance of responsibility. See 2008 U.S. Sentencing Commission Guidelines Manual at 16, 138, 141, 365, 396, *available at* http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2008/manual/GL2008.pdf.

Petitioner filed a direct appeal (No. 11-2737) challenging his conviction for the firearm charge only. See *United States v. Brown*, 724 F.3d 801, 802 (7th Cir. 2013). The Seventh Circuit affirmed Petitioner's conviction. *Id.* at 805.

In March 2013, Petitioner and the Government filed a joint statement for a sentence reduction under 18 U.S.C. § 3582(c)(2) and retroactive amendment 782 to the Federal Sentencing Guidelines. See Docket 08-cr-1009-2, [237]. They agreed that Petitioner was eligible for a sentence reduction from 235 to 228 months based on amendment 782, which

reduced Petitioner's offense level on the attempted possession charge from a 36 to a 34. This reduced the applicable Guidelines' sentencing range from 210 to 262 months down to 168 to 210 months (or 228 to 270 months total, when the consecutive 60 months for the firearm charge is added). The parties requested that the Court reduce Plaintiff's sentence for attempted possession to the bottom of the new Guidelines range, 168 months, for a total sentence of 228 months imprisonment. On March 23, 2015, this Court accepted the parties' joint statement for sentence reduction. Docket 08-cr-1009-2, [239].

On June 17, 2014, Petitioner filed the instant habeas petition [1]. Petitioner alleges that his conviction and sentence should be vacated because the drug quantity attributed to him at sentencing was determined by the Court under the "preponderance of the evidence" standard rather than by the jury under the "beyond a reasonable doubt" standard, in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

On August 18, 2014, Petitioner moved for leave to amend his Section 2255 petition to add two issues: (1) "Whether Trial Counsel was ineffective during the Plea and Sentencing Phases of the case in his failure to inform Petitioner that should Petitioner be found guilty at trial of the firearm charge that he would very likely be sentenced significantly greater than the Mandatory Minimum, a 120 month term of imprisonment, on that change"; and (2) "Whether Appellate Counsel was ineffective in his failure to argue that the District Court's Sentencing decision was violative of the United States Supreme Court's holding in *Alleyne* in that *Alleyne* was decided during the pendency of Brown's Direct Appeal." [6] at 1. The Court granted Petitioner leave to amend to add these issues to his Section 2255 petition. See [8].

On March 21, 2016, Petitioner moved for leave to amend his Section 2255 petition again to add one more issue: whether his "presentation of newly discovered evidence" concerning

DEA policy regarding the conduct of informants during criminal case proceedings "reasonably establishes that had the Petitioner been aware of the substance of this evidence prior to the entry of his guilty plea, he would have instead opted to proceed to trial." [11] at 2.

## II. Analysis

Petitioner seeks *habeas* relief under Section 2255. The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). A Section 2255 motion is not a substitute for a direct criminal appeal. See *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal" (internal citation and quotation marks omitted)).

In this case, Petitioner challenges only his sentence, not his conviction. Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255).

### A. Drug Quantity Attributable to Petitioner's Conduct

The Court first considers "[w]hether the United States Supreme Court's decision in *Alleyne* requires vacation of [Petitioner's] conviction and sentence and remand for resentencing where drug quantity attributable to [Petitioner's] conduct"—68 kilograms—"was decided [by] the court by a preponderance of the evidence" rather than by a jury beyond a reasonable doubt. [1] at 7. In *Alleyne*, the Supreme Court explained that under the Sixth Amendment, "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is

whether the fact constitutes an 'element' or 'ingredient' of the charged offense." 133 S. Ct. at 2158. The Court held that any fact that increases a defendant's *mandatory statutory minimum* sentence is an element of the crime that must be found beyond a reasonable doubt by the jury. See *id.* at 2160-63. The Court reasoned that "[d]efining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment" and also "preserves the historic role of the jury as an intermediary between the State and criminal defendants." *Id.* at 2161 (jury was required to find that the defendant had "brandished" a firearm in connection with a crime of violence because this fact elevated the mandatory statutory minimum term for the firearm offense from five to seven years pursuant to 18 U.S.C. § 924(c)(1)(A)(ii)). The *Alleyne* Court "t[ook] care to note," however, that its ruling "does *not* mean that any fact that influences judicial discretion must be found by a jury." *Alleyne*, 133 S. Ct. at 2163 (emphasis added). The Court has "long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010); *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000)). See also *Apprendi*, 530 U.S. at 481 ("[J]udges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.").

The Court concludes that *Alleyne* does not apply under the facts of this case because the jury specifically found the drug quantity that triggered Petitioner's minimum statutory sentence of 120 months on the attempted possession charge. The jury was instructed at trial that if it found Petitioner guilty of the attempted possession count, it must also find the type and amount of controlled substance involved in the offense, including either: (a) 5 kilograms or more of mixtures containing cocaine; (b) more than 500 grams but less than 5 kilograms of mixtures

containing cocaine; or (c) a measurable amount, but less than 500 grams of mixtures containing cocaine. See [5] at 8 (citing Tr. 396-97). The jury found Petitioner guilty of attempted possession and determined by checking off the relevant box on the verdict form that the offense involved 5 kilograms or more of mixtures containing cocaine. *Id.* (citing Tr. 403).

Pursuant to section 841(b), a conviction based on this drug amount required the imposition of a mandatory minimum sentence of 120 months and a maximum sentence of life imprisonment. 21 U.S.C. § 841(b). Therefore, the fact that increased Petitioner's mandatory minimum sentence to 120 months for the attempted possession charge—that he attempted to possess at least 5 kilograms of mixtures containing cocaine—was determined by the jury beyond a reasonable doubt, in compliance with *Alleyne*. See, e.g., *Simpson v. United States*, 721 F.3d 875, 876-77 (7th Cir. 2013) (where "the jury's verdict by itself requires a 240-month minimum sentence under § 841(b)(1)(A) as it stood when Simpson committed his crimes," the fact that "[t]he judge later estimated his relevant conduct at 3.4 kilograms of heroin and 300 grams of crack" did not entitle Simpson to have his sentence vacated based on *Alleyne*); *United States v. Weidenburner*, 550 F. App'x 298, 305 (7th Cir. 2013) (jury's special finding that conspiracy involved 500 grams or more of a mixture containing methamphetamine was sufficient under the Sixth Amendment and *Alleyne* to support defendant's 20–year statutory minimum sentence for conspiring to manufacture and distribute methamphetamine). The Court's sentence of 235 months fell within the range proscribed by section 841(b), which was 120 months to life imprisonment.

At sentencing, the Court did not run afoul of *Alleyne* by taking into account Petitioner's other relevant conduct—including his stipulation that he obtained at least 58 additional kilograms of cocaine from two individuals working as confidential sources for the DEA—to

9

determine the applicable Sentencing Guidelines range for the attempted possession conviction. See Case No. 08-cr-1009, Docket Entry [220] at 17, 28, 30; see generally U.S.S.G. 2D1.1. The Guidelines do not establish a mandatory minimum sentence; instead they are "recommendations with which 'courts are * * * free to disagree.'" *United States v. Sanchez*, 814 F.3d 844, 850 (7th Cir. 2016) (quoting *United States v. Moore*, 784 F.3d 398, 404 (7th Cir. 2015)); see also *United States v. Warner*, 792 F.3d 847, 850 (7th Cir. 2015) ("District courts enjoy broad discretion to fashion an appropriate, individualized sentence in light of the factors in 18 U.S.C. § 3553(a)."); *United States v. Hernandez*, 731 F.3d 666, 672 (7th Cir. 2013) (district court's determination, for Sentencing Guideline purposes, that defendant who plead guilty to conspiring to possess with intent to distribute more than 500 grams of cocaine—which carried a mandatory statutory minimum sentence of five years and maximum of forty years—was responsible for 150 kilograms of cocaine—which with a reduction for acceptable of responsibility carried a suggested Guidelines range of 210 to 260 months—did not violate defendant's Sixth Amendment rights, absent any indication that the district court judge thought he had to impose a higher mandatory minimum sentence as a result of finding defendant responsible for a larger amount of cocaine than his charging document attributed to him).

The Court explained this to Petitioner at sentencing. See Case No. 08-cr-1009, Docket Entry [220] at 22 ("In *United States v Booker*, [543 U.S. 220 (2005)], the Supreme Court of the United States held that the mandatory provisions of the federal Sentencing Guidelines were unconstitutional, but that the Guidelines still must be considered by the court as advisory along with the statutory factors listed in 18 U.S.C. Section 3553(a)."). The Court also correctly explained at sentencing that "[t]he standard for relevant conduct is preponderance of the evidence." Case No. 08-cr-1009, Docket Entry [220] at 25. See *United States v. Sewell*, 780

F.3d 839, 848 (7th Cir. 2015) ("At trial, a district court need only find by a preponderance of the evidence facts sufficient to support [an] enhancement" under the Sentencing Guidelines); *United States v. Valdez*, 739 F.3d 1052, 1054 (7th Cir. 2014) (after defendant pled guilty to possessing heroin with intent to distribute and admitted responsibility for 700 grams of heroin, district court did not run afoul of *Alleyne* by calculating greater drug quantity solely for purposes of determining defendant's guideline sentencing range without requiring proof beyond a reasonable doubt).

The Court then determined based on Petitioner's offense conduct and his post-arrest statement that Petitioner was accountable for a total of approximately 68 kilograms of cocaine: the 10 kilograms of sham cocaine that Petitioner was arrested attempting to buy on December 4, 2008, and 58 kilograms of cocaine that Petitioner admitted to purchasing from two individuals who were working with the DEA as confidential informants. See Case No. 08-cr-1009, Docket Entry [220] at 25-26. The Court concluded that Petitioner's "own post arrest statements provide[d] more than adequate indicia of reliability to include the relevant conduct in calculating drug quantity." *Id.* at 25. Petitioner has not identified, nor has the Court found, any error in its decision to consider the 58 kilograms of cocaine as relevant conduct in calculating the applicable Guidelines range. Therefore, Petitioner has failed to demonstrate that he is entitled to *habeas* relief based on *Alleyne*. See *United States v. Sewell*, 780 F.3d 839, 850 (7th Cir. 2015) (district court's estimate during sentencing that defendant had supplied approximately 30 to 40 kilograms of cocaine was reasonable where a detective testified that defendant admitted to supplying 30 to 40 kilograms of cocaine and "the district court's finding that Swell possessed 30 to 40 kilograms of cocaine flow[ed] directly from [that testimony]").

Given *Alleyne*'s clear inapplicability to Petitioner's conviction and sentence, the Court finds it unnecessary to resolve the parties' arguments concerning whether Petitioner procedurally defaulted on this argument by failing to raise it on direct appeal or whether *Alleyne* applies retroactively to Petitioner's conviction, which was on direct appeal at the time *Alleyne* was decided.

As to Petitioner's claim of ineffective assistance of appellate counsel (see [6] at 1), the Court concludes that counsel was not ineffective for failing to argue *Alleyne* on direct appeal, because it was not a meritorious argument for the reason explained above. Therefore, (1) counsel's performance did not fall "below an objective standard of reasonableness" and (2) there is not "a reasonable probability that the result of the proceedings would have been different, but for * * * counsel's 'unprofessional errors,'" both of which are required to establish ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 688, 694 (1984) (explaining that "reasonable probability" means "a probability sufficient to undermine confidence in the outcome"); see also *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014); *Caffey v. Butler*, 802 F.3d 884, 901 (7th Cir. 2015).

### B. Trial Counsel's Advice Concerning Plea and Sentencing

The Court granted Petitioner leave to amend his petition [1] to add the following claim: whether trial counsel was ineffective due to counsel's "failure to inform [Petitioner] that should [Petitioner] be found guilty at trial of the firearm charge that he would very likely be sentenced significantly greater than the Mandatory Minimum, a 120 month term of imprisonment, on that charge." [6] at 1. However, in the reply brief that Petitioner was granted leave to file, see [8], Petitioner asserts a different claim: "Whether trial counsel for the Petitioner was ineffective in his failure to properly advise the Petitioner of the possible penalties which could result from

proceeding to trial." See 10 at 1.[1]  Although Petitioner did not have leave to amend his petition to add this claim, the Court will nonetheless consider it for the sake of efficiency.

Petitioner points to two facts in support of his claim.  First, Petitioner asserts that his attorney failed to explain to him prior to trial that "it is typical * * *, during the plea negotiation phase of a criminal case, to negotiate a fixed quantity of drug responsibility for sentencing purposes as part of a plea agreement." [10] at 4.  Second, Petitioner asserts that his attorney failed to advise him that if he "were to plead guilty in a timely manner, [he] would receive a three-point base offense level reduction for acceptable of responsibility." *Id.*  Petitioner argues that "had trial counsel properly and thoroughly explained to him the differences in sentencing exposures in pleading guilty vs. going to trial, he could have well agreed to plead guilty" and received a lower sentence than he received following trial. [10] at 2.  In his declaration, he goes further and claims that he "would have opted to plead guilty to the entirety of [his] case" if he had been "aware of these customary negotiation tactics prior to [his] trial." [10] at 4.

In order to prevail on an ineffective assistance of counsel claim, Petitioner must meet the familiar two-pronged "performance" and "prejudice" test set forth in *Strickland*, establishing that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's "unprofessional errors." 466 U.S. at 694; see also *Ward v. Jenkins,* 613 F.3d 692, 698 (7th Cir. 2010).  Both components of the test must be satisfied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

The Court considers the second part of the *Strickland* test first, because it is dispositive of both of Petitioner's arguments.  In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court

---

[1] This argument is also without merit on its face, because Petitioner was sentenced to the mandatory minimum term for the firearm charge (which was 60 months, not 120 months as asserted by Petitioner). See Case No. 08-cr-1009, Docket Entry [220] at 32.

addressed "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of [a] plea offer and the defendant is convicted at the ensuing trial." *Id.* at 1384. The Court recognized that "[e]ven if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id.* at 1386. Thus, "*[i]f a plea bargain has been offered*, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 1387 (emphasis added). "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* But "[i]f no plea offer is made," the issue of whether trial counsel's advice concerning entering a plea versus going to trial was ineffective "simply does not arise." *Id.* To establish prejudice by "[h]aving to stand trial," the "defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 132 S. Ct. at 1385.

In this case, Petitioner does not argue or present any evidence that the Government offered him a plea agreement. Therefore, the question of whether counsel's advice concerning whether to take a plea was ineffective "simply does not arise," and Petitioner is not entitled to habeas relief. *Lafler*, 132 S. Ct. at 1387.

Moreover, Petitioner has not demonstrated that if he had entered a guilty plea without a plea agreement in place, there is a reasonable chance he would have received a less severe

14

sentence than he received following trial. As to the attempted possession count, the Government maintains, without rebuttal from Petitioner, that even if Petitioner had pled guilty, it would have sought to hold Petitioner accountable at sentencing for the full 68 kilograms of cocaine that he admitted to in his post-arrest statement. Thus, there is no evidence that Petitioner, if he had pled guilty, would have had any opportunity to negotiate a lesser fixed quantity of drugs for the Court to consider during the sentencing phase. Nor would Petitioner have had an opportunity to negotiate a lesser sentencing floor for either the attempted possession or weapons count, because both charges carried a mandatory minimum sentence and were required to be served consecutively. Taking into account the mandatory minimum sentence and the admitted drug quantity (which the Government states it would not negotiate downward), the applicable Guidelines Range on the attempted possession count was 210 to 262 months. Petitioner received a sentence below this range, 175 months, for a total sentence of 235 months when the mandatory consecutive sentence on Count Three (60 months) was added.

Further, there is no support for Petitioner's argument that he "would receive a three-point base offense level reduction for acceptance of responsibility" if he had pled guilty. [10] at 4. "Although pleading guilty may demonstrate acceptance of responsibility, doing so does not automatically entitle a defendant to the reduction" under the Sentencing Guidelines. *United States v. Panadero*, 7 F.3d 691, 694 (7th Cir. 1993) (citing U.S.S.G.§ 3E1.1). Nor is there evidence that Petitioner would have received a less severe sentence than he received following trial if he had plead guilty due to his acceptance of responsibility. Although Petitioner chose to go to trial, the Court at sentencing nonetheless took into account Petitioner's attempted cooperation in applying the Section 3553(a) factors to Petitioner's sentence. See 18 U.S.C. § 3553(a). Specifically, the Court "accept[ed] on [Petitioner's] behalf [that] immediately after the

15

arrest [Petitioner] essentially confessed to all the relevant conduct here, and . . . tried to cooperate with the government." Case No. 08-cr-1009, Docket Entry [220] at 27. The sentence Petitioner received, 175 months, was within the Guidelines range (151 to 188 months) that would have been applicable if Petitioner had been given a three-level reduction for acceptance of responsibility. See 2008 U.S. Sentencing Commission Guidelines Manual at 16, 138, 141, 365, 396, *available at* http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2008/manual/GL2008.pdf.

Finally, the Court notes that even if Petitioner had been offered a plea agreement and demonstrated that counsel's advice concerning the agreement was deficient, the Court would have discretion to determine "whether [Petitioner] should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Lafler*, 132 S. Ct. at 1389. This Court, which was also the sentencing court, would not reduce Petitioner's sentence based on his arguments concerning acceptance of responsibility or drug quantity. The Court already took Petitioner's acceptance of responsibility into account when it sentenced Petitioner, and Petitioner admitted to the drug quantity post-arrest and has presented no basis for questioning the accuracy of that amount.

In sum, Petitioner "has not satisfied his burden" of demonstrating that there was a reasonable probability that but for counsel's alleged errors he would have received a lesser sentence. Rather, he has simply offered "conjecture[e] that a plea would have led to a reduction in his offense level," that the Government would have agreed to a lesser drug quantity, and that the Court would have given him a lower sentence. *Key v. United States*, 72 F. App'x 485, 488 (7th Cir. 2003) (citing *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)). Such "mere

possibility of prejudice is insufficient to demonstrate actual prejudice" under the *Strickland* test. *Id.* For these reasons, the Court denies Petitioner's Section 2255 petition [1].

### C. Motion for Leave to Amend

Next, the Court considers Petitioner's most recent motion [11] for leave to amend his Section 2255 petition [11]. Under Rule 4(b) of the Rules Governing § 2255 Proceedings, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." In the Seventh Circuit, "the preferred practice in dismissing a Section 2255 motion in accordance with Rule 4(b) is to enumerate the issues raised by the movant, specify that each is being summarily dismissed in accordance with the rule, and explain the legal grounds for that action." *United States v. Counts*, 691 F.2d 348, 349 (7th Cir. 1982).

In his motion to amend, Petitioner argues that around January 25, 2016, he first came into possession of evidence that "clearly demonstrates a violation of [DEA] policy regarding the conduct of its informants during criminal cases." [11] at 1. Petitioner argues that, had he been apprised of this evidence "prior to the entry of his guilty plea in the instant matter, he would have opted to, instead, proceed to trial, as the Government would have been unable to present its only inculpatory evidence against Petitioner through government informants of the alleged buy/sell narcotics transactions." *Id.* Petitioner attaches 77 pages of documents to his motion. See [11] at 3-80. Petitioner identifies the first document as an excerpt of the DEA's manual. He has highlighted the following sentences from his two-page excerpt of the manual:

> D. Knowledge of criminal activity by Informants and Defendant-Informants.
> 1.    DEA shall instruct all informants and defendant-informants that they shall not violate criminal law in furtherance of gathering information or providing other services for DEA, and that any evidence of such violation will be reported to the concerned law enforcement authority.
> * * *

> 3. Whenever DEA has reason to believe that an informant or defendant-informant has committed a serious criminal offense the appropriate law enforcement agency shall be advised by DEA, and the appropriate United States Attorney shall be notified.

The remainder of the documents that Petitioner attaches consist of: (1) transcripts from sentencing hearings in *U.S. v. Flores et al.*, Case No. 09 CR 383 (Judge Castillo); (2) a plea agreement from *U.S. v. Buckner*, Case No. 08-CR-989 (Judge Conlon); and (3) an excerpt of a transcript from the trial in *U.S. v. Collins*, Case No. 09-cr-673 (Judge Kendall). [11] at 7-81.

The Court concludes that Petitioner's motion to amend must be denied because it plainly appears from the motion, the attached exhibits, and the record of prior proceedings that Petitioner is not entitled to relief. The most obvious reason is that Petitioner did not enter a guilty plea in his criminal case. Instead, he was convicted by a jury following trial. Therefore, Petitioner's argument that he would not have plead guilty if he was aware of the "newly discovered" evidence is frivolous.

Petitioner's motion also is plainly deficient because he makes no attempt to meet his burden to show that "newly discovered" evidence entitles him to habeas relief. *United States v. Evans*, 224 F.3d 670, 674 (7th Cir. 2000). The excerpt from the DEA manual has no apparent relevance to this case because Petitioner does not allege that or explain how the cooperating source who arranged the sham cocaine transaction between him and the undercover officer violated criminal law in furtherance of gathering information or providing other services for the DEA. Nor does Petitioner explain why he or his counsel needed a copy of the DEA's manual in order to make the argument that the cooperating source's testimony should be excluded based on the cooperating source's criminal conduct. The remaining documents attached to Petitioner's motion, which the Court has reviewed, have no apparent connection to this case and do not support Petitioner's position that he is entitled to habeas relief under Section 2255.

### D. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ on the merits of his claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

### III. Conclusion

For the reasons stated above, Petitioner's motions ([1], [11]) are denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States.

Dated: November 9, 2016

Robert M. Dow, Jr.
United States District Judge